01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REBECCA LEET,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>                    Defendant.<br>_____ | )  Case No. C07-1307-RSL-JPD<br>)<br>)<br>)<br>)<br>)<br>)  REPORT AND RECOMMENDATION<br>)<br>)<br>)<br>)<br>) |

Plaintiff Rebecca Leet  appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends

that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-seven year old woman with a college degree in accounting.

Administrative Record ("AR") at 30, 69, 959.  Her past work experience includes employment

as an accountant, tax preparer and bookkeeper.  AR at 64, 94-101.  Plaintiff asserts that she is

disabled due to abdominal reconstruction, lack of bowel control, recurring  staph infections,

right hand pain from several surgeries, fatigue, depression and anxiety.  AR at 20.  She asserts

an onset date of February 22, 2002.  AR at 954-55.

REPORT AND RECOMMENDATION
PAGE – 1

01        The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 33-

02  41.  Plaintiff requested a hearing, which took place on September 22, 2006.  AR at 952-98.

03  On December 28, 2006, the ALJ issued a decision finding plaintiff not disabled and denied

04  benefits based on his finding that plaintiff could perform a specific job existing in significant

05  numbers in the national economy.  AR at 19-30.

06        Plaintiff requested administrative review of the ALJ's decision, which the Appeals

07  Council denied.  AR at 6-9.  Consequently, the ALJ's decision serves as the Commissioner's

08  final decision for purposes of judicial review.  42 U.S.C. § 405(g).  Plaintiff timely filed the

09  present action challenging the Commissioner's decision.  Dkt. No. 3.

10                                    II.  JURISDICTION

11        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

12  405(g) and 1383(c)(3).

13                                III.  STANDARD OF REVIEW

14        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

15  social security benefits when the ALJ's findings are based on legal error or not supported by

16  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

17  Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is

18  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

19  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

20  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

21  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

22  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

23  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

24  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence

25  is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

26  must be upheld.  *Id.*

REPORT AND RECOMMENDATION
PAGE – 2

01       The Court may direct an award of benefits where "the record has been fully developed

02 and further administrative proceedings would serve no useful purpose." *McCartey v.*

03 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273,

04 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

05       (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the
      claimant's evidence; (2)  there are no outstanding issues that must be resolved

06       before a determination of disability can be made; and (3)  it is clear from the
      record that the ALJ would be required to find the claimant disabled if he

07       considered the claimant's evidence.

08 *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

09 erroneously rejected evidence may be credited when all three elements are met).

10                      IV.  EVALUATING DISABILITY

11       As the claimant, Ms. Leet bears the burden of proving that she is disabled within the

12 meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

13 Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

14 any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

15 expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

16 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

17 are of such severity that she is unable to do her previous work, and cannot, considering her

18 age, education, and work experience, engage in any other substantial gainful activity existing

19 in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v.*

20 *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

21       The Commissioner has established a five step sequential evaluation process for

22 determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

23 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

24 step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

25 any step in the sequence, the inquiry ends without the need to consider subsequent steps.

26 Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20

REPORT AND RECOMMENDATION
PAGE – 3

01  C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

02  Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

03  or more medically severe impairments, or combination of impairments, that limit her physical

04  or mental ability to do basic work activities.  If the claimant does not have such impairments,

05  she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

06  impairment, the Commissioner moves to step three to determine whether the impairment

07  meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§

08  404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for

09  the required twelve-month duration requirement is disabled.  *Id.*

10  When the claimant's impairment neither meets nor equals one of the impairments listed

11  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

12  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

13  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

14  to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

15  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

16  true, then the burden shifts to the Commissioner at step five to show that the claimant can

17  perform other work that exists in significant numbers in the national economy, taking into

18  consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

19  404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

20  claimant is unable to perform other work, then the claimant is found disabled and benefits may

21  be awarded.

22                                    V.  DECISION BELOW

23      On December 28, 2006, the ALJ issued a decision finding:

24      1.      The claimant met the disability insured status requirements of the Act
                on February 22, 2002, the date the claimant stated she became unable

25

26
        [1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant
    physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE – 4

01      to work, and continues to meet them only through March 31, 2005. The claimant has not engaged in substantial gainful activity since

02      February 22, 2002.

03    2.    The medical evidence establishes that the claimant has a severe chronic pain syndrome, chronic gastrointestinal problems, a history of multiple

04      abdominal surgeries, irritable bowel syndrome, status post partial colon resection in November 2002, and recurrent staphylococcal infections.

05      However, she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1,

06      Subpart P, Regulations No. 4.

07    3.    The claimant's testimony concerning her limitations is not found to be fully credible for the reasons set forth in this decision, and is not

08      supported by medical evidence contained in the record.

09    4.    The claimant has the retained residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally, walk six of eight hours,

10      and sit six of eight hours.  She can climb stairs and ramps frequently. She can occasionally climb ladders/ropes/scaffolds, balance, stoop,

11      kneel, crouch and crawl.  She must avoid concentrated exposure to wetness, vibration and hazards.  (20 CFR 404.1545, 416.945).

12

13    5.    The claimant's past relevant work as an account clerk, tax preparer and bookkeeper does not require the performance of the work-related activities precluded by the above limitations.  (20 CFR 404.1565,

14      416.965).

15    6.    The claimant's impairments do not prevent her from performing her past relevant work as an account clerk, tax preparer and bookkeeper, as

16      testified to by the vocational expert.

17    7.    In the alternative, considering the claimant's age, educational background and residual functional capacity, she is able to make a

18      successful vocational adjustment to work which exists in significant numbers in the economy.  Such work includes the following sedentary

19      jobs: (1) information clerk, <u>Dictionary of Occupational Titles (DOT)</u> 237.367-022, specific vocational preparation time (SVP) 3, semi-

20      skilled, 1,117 locally and 101,975 in the national economy; (2) contact representative, <u>DOT</u> 169.167-018, (SVP) 6, skilled work, 61 locally

21      and 11,837 nationally; and (3) callout operator, <u>DOT</u> 237.367-014, (SVP) 2, unskilled, 104 in the local economy, and 12,109 nationally.

22

23    8.    The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)(g), 404.1520(f)(g).

24

25   AR at 29.

26

REPORT AND RECOMMENDATION
PAGE – 5

01

## VI.  ISSUES ON APPEAL

02      The principal issues on appeal involve the ALJ's evaluation of the plaintiff's methicillin

03   resistant staphylococcal infections ("MRSA") and its impact on the plaintiff.  The plaintiff

04   offered medical opinions principally from her treating physician, Dr. Esser, indicating the

05   existence of this bacteria, but the opinions were largely rejected by the ALJ.  Specifically, the

06   issues cited on appeal are:

07

       1.      Did recurrent infections of plaintiff preclude her from having contact
08                 with the public?

09          2.      Did the ALJ properly evaluate the medical opinion of treating physician
              Dr. Esser?
10

       3.      Did the ALJ err in making an adverse credibility determination?
11

Dkt. No. 14, p.1.

12

## VII.  DISCUSSION

13      A.      <u>The ALJ Erred in His Evaluation of the MRSA Evidence and Dr. Esser's
         Opinions</u>

14

15      In his opinion, the ALJ rejected opinions of Dr. Esser, a general practitioner who is the

16   plaintiff's treating physician.  He stated:

17           I cannot give credit or evidentiary weight to the extreme findings noted
    in the medical source statements completed by the claimant's treating
18       practitioner, Doctor Esser, as she provided no explanation or basis for finding
    to support his functional limitations.  There are no clinical findings in her report
19       or other evidence in the record to support such restrictions.  The ultimate
    decision of disabled *vel non* is reserved to the Commissioner, . . . and I am not
20       bound to accept a treating physician's conclusion as to disability or functional
    capacity, particularly when, as here, the opinion is not supported as to detailed,
21       clinical diagnostic evidence. . . .  Doctor Esser did not cite objective finding
    that relate to functional limitations and restrictions assessed; and her finding
22       appear to be based solely upon the claimant's recitation of her subjective
    complaints. . . .
23
    The record contains no examinations or findings to support Doctor Esser's
24       limitations with regard to staph infections. . . .  In addition, Doctor Riedo noted
    in December 2003 that cultures were negative for staph. . . .  At the time of
25       completion of her medical assessment in October 2005, physical examination by
    Doctor Esser was normal.
26

AR at 24.

REPORT AND RECOMMENDATION
PAGE – 6

01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1.      *Standards for Evaluating Treating Physicians*

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

2.      *There Are Substantial References to Plaintiff's Recurrent Staph Infections in the Record*

The plaintiff has a long and detailed medical history regarding seeing physicians for staph infections. An inference from the ALJ's opinion is that Dr. Esser simply included it in a general Physical Evaluation form submitted to the Washington Department of Social and Health Services ("DSHA"). While there are a number of these forms submitted (*see, e.g.*, AR at 734, 737, 765), all of which cited staph infections and abscesses, Dr. Esser also made

REPORT AND RECOMMENDATION
PAGE – 7

01 | continuous reference to her recurrent staph infections as part of her ongoing medical treatment

02 | of the plaintiff. *See, e.g.*, AR at 818, 819, 822, 825, 826, 830-31, 832, 833.  These notes also

03 | reflect a long history of staph infections.

04 | As noted above, the ALJ concluded that the "record contains no examinations or

05 | finding to support Doctor Esser's limitations with regard to staph infections." AR at 24.  This

06 | is, undoubtedly, a reference to Dr. Esser's conclusion that the plaintiff is disabled.  The ALJ

07 | properly noted that the penultimate decision regarding disability is committed to the

08 | Commissioner, rather than a doctor.  However, Dr. Esser did note that the plaintiff's MRSA

09 | was highly contagious, and that the plaintiff should not work with the public.  AR at 739.

10 | Moreover, this limitation was not included in the hypothetical to the Vocational Examiner

11 | ("VE") regarding her ability to work in jobs existing in the national economy.  *See Tackett*,

12 | 180 F.3d at 1101 (noting that hypothetical question should reflect all the claimant's

13 | impairments and limitations supported by substantial evidence in the record).

14 | The ALJ failed to provide clear and convincing reasons for his rejection of Dr. Esser's

15 | opinions.  On remand, the ALJ is directed to reevaluate all of Dr. Esser's opinions, including

16 | but not limited to those on the plaintiff's staph infections and her post-hearing submission

17 | dated October 6, 2006 (AR at 920-24).  If the ALJ believes that Dr. Esser's perspective

18 | regarding plaintiff's possible threat to the public is not appropriate, then he should call a

19 | Medical Expert ("ME") to develop the record.  At the hearing, the ALJ is also directed to

20 | determine what limitations, if any, the plaintiff's recurrent staph infections may have on

21 | plaintiff's ability to perform her prior past work, or other work available in the national

22 | economy.

23 | B.     The ALJ's Error Impacts His Credibility Determination

24 | As almost a pro forma argument, the plaintiff also challenges the ALJ's credibility

25 | determination.  Credibility determinations are particularly within the province of the ALJ.

26 | *Andrews*, 53 F.3d at 1043.  Nevertheless, when an ALJ discredits a claimant's subjective

01 symptom testimony, he must articulate specific and adequate reasons for doing so. *Greger v.*

02 *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  The determination of whether to accept a

03 claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§

04 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; Social Security Ruling ("SSR") 96-7p, 1996

05 WL 374186, \*2-3.  First, the ALJ must determine whether there is a medically determinable

06 impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

07 §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186, \*2-

08 3. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not

09 discredit the claimant's testimony as to the severity of symptoms solely because they are

10 unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.

11 1991) (en banc).  Absent affirmative evidence that the claimant is malingering, the ALJ must

12 provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80

13 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).

14       An ALJ is not "required to believe every allegation of disabling pain" or other non-

15 exertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  When evaluating a

16 claimant's credibility, however, the ALJ "must specifically identify what testimony is not

17 credible and what evidence undermines the claimant's complaints." *Greger*, 464 F.3d at 972

18 (internal quotation omitted).  General findings are insufficient.  *Smolen*, 80 F.3d at 1284;

19 *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility

20 evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony

21 or between his testimony and conduct, daily activities, work record, and the testimony from

22 physicians and third parties concerning the nature, severity, and effect of the symptoms of

23 which he complains.  *Smolen*, 80 F.3d at 1284.

24       In this case, the ALJ's credibility determination is largely supported by the record,

25 based on inconsistencies cited.  Indeed, a serious challenge is not raised by the plaintiff.

26 However, the remand required relating to the plaintiff's recurrent staph infections also requires

01 a limited reevaluation of the plaintiff's credibility.  Dr. Esser opined that the staph infections

02 made it difficult for the plaintiff to sit for long periods of time.  This may also be tied into her

03 claim of fecal incontinence.  Because this matter is being remanded for further administrative

04 proceedings to reevaluate Dr. Esser's opinions, the ALJ should also consider whether this

05 reevaluation would otherwise impact the plaintiff's adverse credibility determination.

06                                             VIII.  CONCLUSION

07           For the foregoing reasons, the Court recommends that this case be REVERSED and

08 REMANDED to the Commissioner for further administrative proceedings not inconsistent

09 with this Opinion.  A proposed order accompanies this Report and Recommendation.

10           DATED this 22 day of April, 2008.

11

12                                                        _James P. Donohue_

13                                                        JAMES P. DONOHUE
                                                         United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26